**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SHLOMO DOTAN,                        )
                                     )        Civil Action No. 3:23-cv-181
                  Plaintiff,         )
                                     )        The Honorable Kim R. Gibson
           v.                        )
                                     )
CITY OF ALTOONA,                     )
                                     )        **JURY TRIAL DEMANDED**
                  Defendant.         )

<u>**BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT**</u>

Defendant, City of Altoona, through its attorneys, Thomas, Thomas & Hafer LLP, respectfully submits the following Brief in Support of Motion to Dismiss Complaint:

## I.        FACTS ALLEGED IN COMPLAINT

Plaintiff's claims are based upon alleged actions taken by the City of Altoona ("City") between 2016 and 2021 in relation to the City's enforcement of its property maintenance code with respect to three properties owned by Plaintiff:  his residence at 315 Aldrich Avenue, a rental property at 909 27th Street, and a rental property at 311 25th Street.  Such actions included notices of violations; citations, almost all of which resulted in Plaintiff being found guilty; fines imposed as a result of the same; and the condemnation and demolition of the rental property at 909 27th Street.

Plaintiff alleges that, in or around 2011, the City enacted an ordinance based on the "international safety code." (Complaint, ¶ 14).  The ordinance provided for the inspection of rental properties for maintenance and safety issues, and required the registration of vacant homes for purposes of rehabilitating such buildings and preventing blight and access by transient persons. (Id. ¶¶ 11-12).  To defray inspection costs, the ordinance required a registration fee for rental units and vacant properties.  (Id. ¶ 13).  Plaintiff alleges that he paid the required fee sometime between

2011 and 2015, at which time his property was allegedly found to be clean and safe.  (Id. ¶15).
His dispute with the City began in 2016, as addressed below with respect to each of his three
properties.

A.      Allegations Involving the Property at 909 27th Street

On September 20, 2016, a City code enforcement officer (Thomas Hammel) conducted a
drive-by inspection of the property located at 909 27th Street, as a result of a neighbor contacting
the City to request that the property be painted.  (Id. ¶¶ 18-19).  Mr. Hammel addressed a letter to
Plaintiff, dated September 20, 2016, regarding four violations of the City's property maintenance
code.  (Id. ¶¶ 20, 23).[1]  Plaintiff claims that he did not receive the letter, but thereafter heard of its
existence and requested a copy, which he allegedly received on May 11, 2017.  (Id. ¶¶ 21-22).

Plaintiff admits that photographs taken by Mr. Hammel on several occasions showed the
accumulation of a large amount of trash and debris on the porch of the property, which he was
directed to correct within 7 days.  (Id. ¶¶ 25-26, 30).  The letter purportedly stated that the other
issues were to be corrected by June 5, 2017.  (Id. ¶ 30).  Plaintiff claims that, by February 28, 2017,
he had addressed all of the issues noted in the letter, other than the exterior painting, and that he
contacted Mr. Hammel to request that he re-inspect the property.  (Id. ¶¶ 29, 31).

Plaintiff alleges that, prior to June 5, 2017 (the date by which he was directed to correct
the noted violations) and without having re-inspected the property, the City issued citations for six
violations of the property maintenance code at the 909 27th Street property.  (Id. ¶¶ 34, 40).
Plaintiff claims that he did not receive the citations identifying the property in question, but only
received a copy of the complaint (apparently referring to the complaint filed with the Magisterial

---

[1] Plaintiff purports to attach this letter (referenced as Exhibit D) to the Complaint, as well as the further
documents referenced as Exhibits E through L.  However, the Complaint served upon Defendant contains
no such attachments.

District Judge), such that when he appeared in court, his ability to adequately defend the citations was allegedly impaired.  (Id. ¶¶ 38-39).  Plaintiff admits that he was found guilty in five of those six matters, and the remaining matter was allegedly withdrawn.  (Id. ¶ 37).

Plaintiff received three additional citations after June 5, 2017, by which time he had allegedly completed all repairs except for the exterior painting.  (Id. ¶¶ 42, 45).  He was found guilty on one such citation on February 1, 2018, and the other two were allegedly withdrawn. (Complaint, ¶¶ 43-44).

On or about June 25, 2018, the City condemned the property at 909 27th Street and posted notice of the same.  (Id. ¶ 51).  The property was thereafter released from condemnation sometime thereafter, but was re-posted for condemnation as of January 31, 2019.  (Id. ¶ 59).  On the same date, the City sent Plaintiff a letter assessing a $500 vacant property fee.  (Id. ¶ 60).  According to Plaintiff, the prior tenant had vacated the property less than 30 days prior thereto.  (Id. ¶ 61).

Approximately two years and eight months later, on September 16, 2021, the house located on the 909 27th Street property was demolished at the alleged direction of the City.  (Id. ¶ 174).

## B.      Allegations Involving the Property at 311 25th Street

The rental property owned by Plaintiff at 311 25th Street was inspected by the City on or about February 15, 2017.  (Id. ¶ 63).  The property was found to be unregistered (apparently referring to the aforementioned ordinance's requirement that rental properties be registered as such), and twelve violations were cited.  (Id. ¶¶ 63, 65).  Plaintiff again claims not to have received the citations but only the hearing notice, which purportedly did not identify the property to which the citations pertained.  (Id. ¶ 64).  Plaintiff admits that he was found guilty on ten of the twelve citations.  (Id. ¶¶ 67-68).

Plaintiff further alleges that the tenant of the 311 25th Street property was told by the City inspector not to pay rent until the property was registered and the violations were corrected.  (Id. ¶ 71).  Due to the tenant's refusal to pay rent, Plaintiff commenced eviction proceedings and obtained a judgment against the tenant in the amount of $4,400.  (Id. ¶¶ 72-76).

### C.    Allegations Involving the Property at 315 Aldrich Avenue

The property located at 315 Aldrich Avenue is Plaintiff's primary residence.  (Id. ¶ 4).  Plaintiff alleges that, prior to 2016, he began using the property as an office, and had the water service discontinued because he purportedly did not need it for such use.  (Id. ¶¶ 90-91).  Upon Plaintiff's discontinuance of the water service, the City allegedly assumed that the property was vacant and sent him a letter dated October 19, 2016 imposing a Vacant Property Registration Fee of $1,000, which Plaintiff refused to pay.  (Id. ¶¶ 92-93).  He was also billed for Property Maintenance Reinspection Fees totaling $300.  (Id. ¶ 94).

On August 8, 2018, the City directed Plaintiff to board up the property at 315 Aldrich Avenue as vacant property.  (Id. ¶ 95).  Plaintiff claims that the property was well-maintained and that he was frequently using it at this time.  Id.  On October 19, 2018, the City allegedly posted a large "VACANT" notice on the property, which Plaintiff acknowledges was in fact vacant by that time due to the mortgage lender having initiated foreclosure proceedings and barred Plaintiff's access to the property.  (Id. ¶ 97).  Plaintiff alleges that the mortgage was thereafter amended and the foreclosure terminated.  (Id. ¶ 98).

Additionally, on or about October 19, 2018, the City issued three citations to Plaintiff related to the vacancy of the property at 315 Aldrich Avenue.  (Id. ¶¶ 99-100).  Judgments and fines were entered against Plaintiff in all three of those matters.  (Id. ¶¶ 103).  Plaintiff alleges that

all three of these judgments are currently on appeal in the Court of Common Pleas of Blair County. (Id. ¶ 118).

> **D.**     **Procedural History and Summary of Claims Asserted**

Plaintiff commenced this action in the Court of Common Pleas of Blair County, Pennsylvania (the "State Court"), via a Praecipe for Writ of Summons filed on September 15, 2022, followed by a Complaint filed on July 13, 2023.  Defendant duly removed the action to this Court on August 21, 2023.  The 7-count Complaint purports to assert the following claims against the City:

- Negligence (Count I), based upon the City's alleged breach of a duty to inspect properties to assess compliance prior to issuing citations alleged issuance of citations prior to the stated deadline for compliance;

- Interference with Contract (Count II), based upon the City's issuing a citation to Plaintiff regarding a rental property with alleged knowledge that this would result in the tenant terminating his lease with Plaintiff;

- Abuse of Process (Count III), based upon the City issuing a citation to Plaintiff prior to the deadline Plaintiff had been given to complete repairs at the subject property;

- Substantive Due Process under the United States and Pennsylvania Constitutions (Count IV), based upon Plaintiff being deprived of his property on the alleged basis of motivations unrelated to legitimate governmental interests;

- Equal Protection under the United States and Pennsylvania Constitutions (Count V), based upon the City allegedly treating Plaintiff differently than similarly situated property owners in the enforcement of its codes, ordinances, and regulations;

- False Imprisonment (Count VI), based upon Plaintiff being jailed pursuant to bench warrants issued by the District Magistrate, as a result of Plaintiff's non-payment of fines due to financial hardship allegedly resulting from the City's alleged unlawful conduct toward him; and

- "Eminent Domain" (Count VII) (apparently intended to assert a Fifth Amendment taking claim), based upon the City's demolition of the 909 27th Street property owned by Plaintiff, without a Declaration of Taking or just compensation.

For the reasons fully set forth below, the Complaint should be dismissed as a matter of law pursuant to Rule 12(b)(6).

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (U.S. 2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal quotations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (citing Twombly, 550 U.S. at 556).

The Third Circuit has explained that a district court, in applying the *Twombly/Iqbal* standards, should first separate the factual and legal elements of a claim.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  While the court must accept all well-pleaded facts as true, it may disregard all legal conclusions.  Id. at 210-11.  The court must then determine whether such facts "show" an entitlement to relief.  Id. at 211.  A motion to dismiss should be granted pursuant to Rule 12(b)(6) if the factual allegations are insufficient to "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.

### III.   ARGUMENT

**A.   All of Plaintiff's claims relating to occurrences prior to September 15, 2020 are barred by the applicable statutes of limitations.**

The Third Circuit permits a defendant to assert the statute of limitations defense via a motion to dismiss pursuant to Rule 12(b)(6) when the dates alleged in the subject pleading show that the cause of action has not been brought within the applicable limitations period, *i.e.*, where it is apparent on the face of the complaint that the claims asserted therein are time-barred.  Robinson v. Johnson, 313 F.3d 128, 135, n.3 (3d Cir. 2002); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994)("While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.").

"The statute of limitation for claims arising under [42 U.S.C.] § 1983 is the state statute of limitation for personal injury actions, which in Pennsylvania is two years."  Garvin v. City of Phila., 354 F.3d 215, 220 (3d Cir. 2003)(citing 42 Pa.C.S. § 5524).  The statute of limitations on such causes of action begins to run "when the plaintiff has a complete and present cause of action," that is, "when the plaintiff can file suit and obtain relief."  Wallace v. Kato, 549 U.S. 384, 388 (2007)(internal quotations and citation omitted); Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998)(a claim accrues under 42 U.S.C. § 1983 at the time the plaintiff knew or had reason to know of the injury which is the basis of the lawsuit).  A cause of action accrues "upon awareness of actual injury, not upon awareness that [the] injury constitutes a legal wrong."  Oshiver, 38 F.3d at 1386.  "[I]t is also important to note just how little knowledge a plaintiff must have in order for his claim to accrue. The general rule establishes a relatively low standard, requiring only that the plaintiff should have known of his injury for the claim to accrue."

McGarrey v. Marquart, 2010 WL 235115 (W.D. Pa. 2010)(citing Sameric, 142 F.3d at 599).

With respect to the claims asserted under state law, Pennsylvania applies a two-year statute of limitations to actions for "malicious abuse of process" and to actions seeking damages for personal injury "founded on negligent, intentional, or otherwise tortious conduct." 42 Pa.C.S. § 5524. A two-year statute of limitations also applies to claims of tortious interference with contractual relations. Maverick Steel Co. v. Dick Corp./Barton Malow, 54 A.3d 352, 358 (Pa. Super. 2012)(citing 42 Pa.C.S. § 5524).

Here, Plaintiff commenced suit on September 15, 2022. All of the claims asserted in the Complaint (the constitutional claims asserted in Counts IV, V, VI, and VII, pursuant to 42 U.S.C. 1983,[2] and the state law claims asserted in Counts I, II, III, and VI)[3] are governed by a two-year statute of limitations. Thus, claims based on events prior to September 15, 2020 are clearly time-barred. As set forth in the factual summary above, all of the acts described in the Complaint are alleged to have occurred between September 2016 and January 2019, with the sole exception of the demolition of the property at 909 27th Street on September 16, 2021. The demolition of that property appears to be the subject of Counts IV and VII.[4]

Accordingly, Defendant respectfully submits that all claims should be dismissed with prejudice on the basis of the statute of limitations, other than Counts IV and VII to the extent that they relate to the demolition of the house located on the property at 909 27th Street on September 16, 2021.[5]

---

[2] The claims asserted in Counts IV and V are also purportedly asserted under the Pennsylvania Constitution, and in this respect, are further addressed in Section III.H. hereinbelow.

[3] It is unclear from the Complaint whether the false imprisonment claim in Count VI is asserted under the Fourth Amendment or Pennsylvania common law. For purposes of this Motion to Dismiss, Defendant will address Count VI as if asserted as both a federal and state law claim.

[4] Counts IV and VII should be dismissed on the grounds set forth hereinbelow in Sections III.C., F., and G.

[5] Defendant maintains that those claims should be dismissed on other grounds, as addressed hereinbelow.

**B.     All of Plaintiff's state law claims (Counts I, II, III, and VI) are barred by the Political Subdivision Tort Claims Act.**

A local agency is generally immune from tort claims pursuant to the Political Subdivision Tort Claims Act ("PSTCA" or "Tort Claims Act"), which provides:  "[N]o local agency shall be liable for any damages on account of any injury to a person or  property caused by any act of the local agency or an employee thereof or any other person."  42 Pa.C.S. § 8541.  The term "local agency" is defined by the PSTCA as "[a] government unit other than the Commonwealth government."  42 Pa.C.S. § 8501.[6]    "The clear intent of the Tort Claims Act was to insulate the government from exposure to tort liability….Tort immunity [thereunder] is a non-waivable, absolute defense."  McShea v. City of Phila., 995 A.2d 334, 341 (Pa. 2010).  "Whether the City is immune under the Tort Claims Act is a pure question of law."  Metro. Edison Co. v. City of Reading, 640 Pa. 270, 279 n.4, 162 A.3d 414, 419 (2017).

Certain "limited exceptions" apply to the PSTCA's general grant of immunity, under which a local agency may be held liable for damages only if:  (1) the damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available an immunity defense; (2) the injury was caused by the negligent acts of the local agency or its employee; and (3) the negligent acts fall within one of the enumerated exceptions to governmental immunity listed in [42 Pa.C.S.] 8542(b).  Falor v. Sw. Pa. Water Auth., 102 A.3d 584, 586-87 (Pa. Commw. 2014).  It is the plaintiff's burden to establish that an exception to immunity applies, by demonstrating that each of these three threshold requirements are met.  Olick v. City of Easton, 2019 Pa. Commw. Unpub. LEXIS 183, at *6 (Pa. Commw. Ct. 2019) (citing Santori v. Snyder, 645 A.2d 443, 446-47 (Pa. Commw. 1994)).

---

[6] Thus, there can be no dispute that the City of Altoona, as a local government unit, is a "local agency" within the meaning of the PSTCA.

The exceptions to immunity are enumerated in Section 8542(b) of the PSTCA, and apply only in the context of alleged negligent acts involving: (1) the operation of a motor vehicle; (2) the care, custody, or control of personal property; (3) the care, custody, or control of real property; (4) a dangerous condition of trees, traffic controls, or street lights; (5) a dangerous condition of specified utility service facilities; (6) a dangerous condition of a street; (7) a dangerous condition of a sidewalk; (8) the care, custody, and control of animals; or (9) the sexual abuse of a minor. 42 Pa.C.S. §§ 8541, 8542.

The Supreme Court has repeatedly specified that, "because of the clear intent [of the PSTCA] to insulate government from exposure to tort liability, [these] exceptions to immunity are to be strictly construed." Walker v. Eleby, 842 A.2d 389, 392 (Pa. 2004) (quoting Lockwood v. City of Pittsburgh, 751 A.2d 1136, 1139 (Pa. 2000)); see also, SEPTA v. Hussey, 588 A.2d 110, 112 (Pa. Commw. 1991)("[B]oth sovereign immunity and local governmental immunity exceptions must be narrowly interpreted to achieve the express legislative intent to insulate the Commonwealth and its political subdivisions from tort liability.").

Here, Plaintiff asserts various tort claims against the City of Altoona under Pennsylvania common law, consisting of negligence (Count I), interference with contract (Count II), abuse of process (Count III), and false imprisonment (Count VI). None of these claims involve any conduct falling within any of the narrow exceptions to immunity set forth at 42 Pa.C.S. 8542(b), supra. Additionally, Counts II, III, and VI are intentional torts, with respect to which a local agency can never be held liable. Crock v. City/Town of Mt. Lebanon, 2010 U.S. Dist. LEXIS 63773, at *21-22 (W.D. Pa. May 25, 2010) (a borough and its employees in their official capacities are immune from intentional tort claims under the PSTCA); Lory v. City of Philadelphia, 674 A.2d 673, 675 (Pa. 1996) ("The Tort Claims Act, however, renders the city immune from claims based on willful

or malicious conduct."); <u>Orange Stones Co. v. City of Reading</u>, 87 A.3d 1014, 1022-23 (Pa. Commw. 2014)("Under the Tort Claims Act, the City cannot be held liable for intentional torts, and [plaintiffs'] claims for wrongful use of civil proceedings, abuse of process, and intentional interference with contractual relations do not otherwise fit within a delineated exception to governmental immunity for negligence claims.").

Accordingly, the state law claims asserted against the City at Counts I, II, III, and VI are clearly barred by the immunity provisions of the PSTCA, such that dismissal with prejudice of all such claims is warranted pursuant to Rule 12(b)(6).

**C.    Plaintiff's substantive due process claim (Count IV) is legally insufficient.**

In Count IV of the Complaint, Plaintiff alleges that he was deprived of his property (apparently referring to the demolition of the house located at 909 27th Street) without justification and on the basis of improper motives not rationally related to legitimate governmental interests, allegedly constituting an arbitrary abuse of government power.  Claims for the alleged taking of property by a government entity are analyzed under the Fifth Amendment.  <u>See</u> U.S. Const., amend. V ("Nor shall private property be taken for public use, without just compensation."). The Supreme Court has explained that, where a provision of a particular Amendment is the explicit source of the constitutional right asserted, the claim must be analyzed under that Amendment, and not under "a more generalized notion" of due process, as provided by the Fourteenth Amendment. <u>Graham v. Connor,</u> 490 U.S. 386, 395 (1989); <u>County of Sacramento v. Lewis,</u> 523 U.S. 833, 842 (1998).  Accordingly, Count IV of the Complaint should be dismissed to the extent that Plaintiff seeks to assert, under the Fourteenth Amendment, a claim for alleged taking of his property.

Alternatively, to the extent that the Court deems the allegations of arbitrary abuse of power to assert a substantive due process claim, any such claim is legally insufficient.  To establish a

substantive due process claim based upon abuse of official power, the plaintiff must show that he was deprived of a fundamental interest subject to substantive due process protection, through official conduct which "shocks the conscience."  County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998); Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008).  To meet this standard, the alleged conduct must be "so brutal and offensive that it does not comport with traditional ideas of fair play and decency" or must "interfere[] with rights implicit in the concept of ordered liberty."  Id. at 847 (citing Breithaupt v. Abram, 352 U.S. 432, 435 (1957) and United States v. Salerno, 481 U.S. 739, 746 (1987)).  "Thus, in a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  Id. at 847.  The Supreme Court has emphasized that "only the most egregious official conduct can be said to be "arbitrary in the constitutional sense."  Id. at 846; United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 399 (3d Cir. 2003).  "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."  Id. at 849.

Here, even if it is assumed that the demolition of Plaintiff's property involved a fundamental interest protected by substantive due process, the facts pled in the Complaint fail to demonstrate conscience-shocking conduct.  Plaintiff alleges that the City had enacted a property inspection ordinance for purposes including "maintenance and safety and to prevent the degradation of properties" and "to prevent blight" (Complaint, ¶¶ 11-12); that he was cited for multiple violations thereof with respect to the property at 909 27th Street and was found guilty of most such violations (id. ¶¶ 34-37, 42-43); and that the property was ultimately condemned by the City, with notice of the same posted on June 25, 2018, and again on January 31, 2019, such that

Plaintiff had a lengthy notice period prior to the City demolishing the property on September 16, 2021 (id. ¶¶ 51, 59). Such allegations clearly fail to establish conduct "so egregious, so outrageous" as to shock the conscience.

Accordingly, Count IV of the Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6).

**D.     Plaintiff's equal protection claim (Count V) is legally insufficient.**

In Count V of the Complaint, Plaintiff asserts an equal protection claim based upon allegations that the City, in enforcing its codes, ordinances, and regulations, treated him differently from other similarly situated property owners and landlords. (Complaint, ¶ 159). Plaintiff alleges that this alleged differential treatment was motivated by the City's alleged "dislike" of him. Id. Plaintiff does not allege that he was treated differently on the basis of any protected classification, such that his equal protection claim is brought under a "class of one" theory.

To sustain a "class of one" equal protection claim, a plaintiff must demonstrate that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). In asserting a violation of equal protection, a plaintiff cannot rely upon "conclusory, boilerplate language" or "bald assertion[s] that other[s]…were treated in a dissimilar manner" to survive dismissal. Young v. Delaware County Community College, 2008 U.S. Dist. LEXIS 72573, at 9 (E.D. Pa. 2008), citing Young v. New Sewickley Twp., 160 Fed. Appx. 263, 266 (3d Cir. 2005)(citing Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005)). Thus, where a complaint asserting an equal protection violation fails to "describe other similarly situated individuals who received more favorable treatment," the plaintiff has not satisfied the pleading requirements of Twombly and Iqbal. Mims v. City of Phila., 2010 U.S. Dist. LEXIS 50642, 13-14 (E.D. Pa. 2010);

*see also* <u>Young</u>, 160 Fed. Appx. at 266 (to survive a motion to dismiss, an equal protection plaintiff must allege "occasions or circumstances" of differential treatment; <u>D'Altilio v. Dover Twp.</u>, 2007 U.S. Dist. LEXIS 71414, at 25-26 (M.D. Pa. 2007)(explaining that a plaintiff asserting a class-of-one equal protection claim cannot avoid dismissal without alleging the existence of similarly situated individuals and the ways in which such individuals were treated differently)(*citing* <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 239 (3d Cir. 2006)).

Here, Plaintiff relies solely on conclusory and boilerplate language in asserting that his equal protection rights were violated. The Complaint fails to identify any other property owner who received more favorable treatment from the City or to describe the alleged difference in treatment. Instead, Plaintiff simply asserts that the City enforced its regulations against him "selectively," in a manner "different from [its treatment of] other property owners and landlords in the City." (Complaint, ¶ 159). Pursuant to the above-cited authority, such conclusory allegations are insufficient to sustain an equal protection claim. According, Count V of the Complaint should be dismissed.

**E.      Plaintiff's false imprisonment claim (Count VI) is legally insufficient.**

In relation to his false imprisonment claim, Plaintiff alleges that he was financially unable to comply with the payment plan set by the District Magistrate regarding the fines imposed upon him (apparently referring to fines resulting from the citations issued by the City on which he was found guilty). (Complaint, ¶ 164). Plaintiff alleges that as a result of his inability to make the required payments, the District Magistrate issued bench warrants on three occasions, each of which allegedly resulted in his being arrested by the Blair County Sheriff and jailed. (Complaint, ¶¶ 166, 171). Plaintiff's false imprisonment claim against the City, whether asserted under federal or state law, fails as a matter of law for a number of reasons, any of which standing alone warrants

dismissal of this claim.

First, Plaintiff's own allegations establish that it was not City officials who effected the arrest and placed Plaintiff in jail, but the County Sheriff, acting pursuant to a warrant issued by the Magisterial District Court.  As such, no cause of action for false imprisonment can arise against the City.  Second, absolute immunity applies when a person is apprehended and incarcerated pursuant to a valid bench warrant.  Lepre v. Tolerico, 156 F. App'x 522, 525 (3d Cir. 2005)(citing Waits v. McGowan, 516 F.2d 203, 206-07 (3d Cir. 1975).

Third, Plaintiff cannot establish a lack of probable cause, as is necessary to sustain a claim for false imprisonment.  See, Wallace v. Kato, 549 U.S. 384, 388 (2007)("False arrest and false imprisonment overlap; the former is a species of the latter."); James v. City of Wilkes–Barre, 700 F.3d 675, 680 (3d Cir. 2012)(to sustain a false arrest claim, the plaintiff must establish that an arrest occurred, and that it lacked probable cause); Goodwin v. Conway, 836 F.3d 321, 327 (3d Cir. 2016)(the existence of probable cause is a "complete defense" to a Fourth Amendment claim for false arrest).[7]  Probable cause exists as a matter of law when the plaintiff has been convicted of one or more offenses related to the arrest.  Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Moreover, a claim for damages under 42 U.S.C. § 1983 is not cognizable if it calls into question the lawfulness of the plaintiff's conviction.  Id.  Here, probable cause is conclusively established by the guilty determinations and related fines issued by the District Magistrate with respect to the citations issued by the City (the non-payment of which formed the basis of Plaintiff's arrests), such

---

[7] Claims of false arrest/imprisonment under Pennsylvania law are governed by the same standards cited above with respect to such claims under the Fourth Amendment.  See, Alleyne v. Pirrone, 180 A.3d 524, 543 (Pa. Commw. 2018)(the torts of false arrest and false imprisonment are synonymous); Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. 2010)(the existence of probable cause renders an arrest lawful); McGriff v. Vidovich, 699 A.2d 797, 800 (Pa. Commw. 1997)(a guilty plea conclusively establishes probable cause, thus precluding a plaintiff from establishing an essential element of a claim of false arrest).

that Plaintiff's false imprisonment claim is precluded as a matter of law.

Additionally, to the extent that the false imprisonment claim is asserted under state law, it is barred by the Political Subdivision Tort Claims Act, as set forth in Section III.B. hereinabove. To the extent that this claim is asserted under federal law, the claim is legally insufficient pursuant to Monell, as fully discussed in Section III.G. hereinbelow.

For any or all of these reasons, Count VI of the Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6).

**F.      Plaintiff's "eminent domain" claim (Count VII) is legally insufficient.**

The Fifth Amendment requires that "just compensation" be paid when the government "takes private property **for public use**."   United States v. 50 Acres of Land, 469 U.S. 24, 25-26 (1984)(emphasis added).  A "taking" requiring compensation is deemed to occur only when the government effects a physical occupation of the property or takes title to the property, or regulates the use of property in a manner that unfairly singles out the property owner to bear a burden that should be borne by the public as a whole.  Yee v. City of Escondido, 503 U.S. 519, 522-23 (1992). A taking does not occur when the plaintiff has not been suffered a total deprivation of the property, as when the plaintiff retains possession of the property.  Munoz v. City of Union City, 481 F. App'x 754, 759 (3d Cir. 2012).  As the Third Circuit explained in Munoz:

> [Plaintiff] argues that the demolition of the Building eviscerated the property's intended purpose of providing rental income. But the Takings Clause asks not whether the plaintiff's most profitable use of the property has been destroyed. A Takings Clause claim cannot lie where the plaintiff was not deprived of all beneficial uses of his property. See Andrus v. Allard, 444 U.S. 51, 65-66, 100 S. Ct. 318, 62 L. Ed. 2d 210 (1979). [Plaintiff] concedes that he retains a possessory interest in the property. Indeed, [Plaintiff] is still entitled to put the property to any number of beneficial uses. The record reflects that [Plaintiff] simply lacks sufficient funds to do so, at present. Even if [the city official] was without authority to order the demolition, [Plaintiff's] continuing possessory interest in the property prevents him from establishing a Takings Clause violation.

Id.

Moreover, "[a] municipality may, in the exercise of its police power, without compensation destroy a building or structure that is a menace to the public safety or welfare, or require the owner to demolish the dangerous piece of property." In re 106 N. Walnut, LLC, 447 F.App'x 305, 309 (3d Cir. 2011). A municipality's demolition of property for purposes of public safety is **not** deemed to be a taking within the meaning of the Fifth Amendment. 3909 Realty LLC v. City of Phila., 2021 U.S. Dist. LEXIS 106941, at *14 (E.D. Pa. June 8, 2021).

In 3909 Realty, the district court granted the defendant city's motion to dismiss the plaintiffs' Fifth Amendment claim, based upon the city's demolishing a building on the plaintiffs' property and thereafter asserting a lien against the property for the costs of demolition. The City issued a demolition permit for the property in March 2020, which was followed by a notice of violation issued in June 2020, indicating that the property had been inspected and identifying multiple violations, on the basis of which the property was determined to be imminently dangerous. The property was demolished by the city in late July or early August of 2020, and the plaintiffs filed a civil rights action under 42 U.S.C. § 1983, including a Fifth Amendment taking claim. The court granted the city's motion to dismiss, holding, *inter alia*, that "property is not 'taken' where a city or other appropriate public authority has acted pursuant to its right and obligation to ensure public safety in remediating a dangerous condition," and that the plaintiffs had not pled an actionable taking claim "because the City demolished the Property pursuant to its power to abate a public hazard and because Plaintiffs have retained possession and beneficial use of the Property." Id. at *14.

The instant case is materially indistinguishable from 3909 Realty. Here, the City of Altoona's Planning Commission issued a Resolution dated September 1, 2020, setting forth a

declaration of blight with respect to the property at 909 27th Street (the "Resolution"). A true and correct copy of the same is attached as Exhibit 1, and Defendant respectfully requests that the Court take judicial notice of this public record. The Resolution reflects that the subject property was found to be blighted under specified provisions of the City ordinance governing blight, including findings that the property's physical condition rendered it a public nuisance, as well as an attractive nuisance to children. (Exhibit 1). The Resolution further reflects that the property was unfit for human habitation due to its dilapidated, unsanitary, unsafe or vermin-infested condition and/or its lack of facilities and equipment required by the City's housing code. Id. The Resolution states that the property "shall in no way be acquired by any public sector agency," and that the Redevelopment Authority "has not been nor will be involved in any way." Id. The Resolution ultimately recommended that the site be razed and that the appropriate reuse of the property is residential in nature. Id. As alleged in the Complaint, the structure on the property was demolished approximately 1 year later, on September 16, 2021. Thereafter, on September 23, 2021, the City filed, in the Court of Common Pleas of Blair County, at No. 2021 GN 3085, a Municipal Lien in the amount of $8,942.00 for the demolition costs incurred by the City. A true and correct copy of this court record is attached as Exhibit 2, and Defendant respectfully requests that the Court take judicial notice of the same. The Municipal Lien reflects that the owner of the property against which the lien is asserted is Plaintiff herein, Shlomo Dotan. (Exhibit 2).

Based on the above, Plaintiff cannot establish a Fifth Amendment taking claim as a matter of law. First, the property was not taken for public use. Plaintiff has not alleged that he was deprived of his own private ownership or possession of the subject property; his own allegations indicate that he remains the owner thereof. (Complaint, ¶ 5). The court-filed Municipal Lien likewise reflects Plaintiff's ongoing ownership of the property following demolition of the house

located thereon.  Additionally, the Resolution declares that the property shall not be acquired by any public sector agency or be subject to involvement of the Redevelopment Authority.  As held by the Third Circuit in <u>Munoz</u>, <u>supra</u>, no taking claim arises under such circumstances.

Second, as explained by the Third Circuit in <u>In re 106 N. Walnut</u>, <u>supra</u>, a municipality has an inherent right, through the exercise of its police power, and without compensating the owner, to destroy a structure that endangers the public safety or welfare.  As the district court recognized in <u>3909 Realty</u>, a demolition under such circumstances, as reflected in the above-referenced Resolution, does not constitute a "taking" in violation of the Fifth Amendment.  2021 U.S. Dist. LEXIS 106941, at *14.

For either or both of these reasons, Count VII of the Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6).

### G.   Plaintiff's 42 U.S.C. 1983 claims against the City (Counts IV, V, VI, and VII) are legally insufficient pursuant to <u>Monell</u>.

The law is settled that a government entity cannot be held liable under 42 U.S.C. § 1983 ("Section 1983") solely because it employs an alleged tortfeasor, because *respondeat superior* liability is not recognized under Section 1983.  <u>Board of County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 403 (1997); <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 691 (1978).  Thus, where a Section 1983 plaintiff claims that a local government caused one or more of its employees to violate his rights, "rigorous standards of culpability and causation must be applied" to ensure that the local government is not held liable solely for the individual actions of an employee.  <u>Reitz v. County of Bucks</u>, 125 F.3d 139, 145 (3d Cir. 1997).  Those standards require the plaintiff to identify a formal governmental "policy" or an informal

governmental "custom" of the municipality that caused the alleged violation of the plaintiff's constitutional rights.  Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000).  A "policy" is shown by alleging that an employee or agent acted pursuant to "an official proclamation, policy or edict" issued by a municipal decision-maker with final authority to establish municipal policy as to the action in question.  Id. (quoting Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996)); Watson v. Abington Twp., 478 F.3d 144, 155 (3d Cir. 2007).  A "custom" is shown by alleging that a practice of the governmental entity is so "well-settled and widespread" that it virtually constitutes law, regardless of whether it is specifically authorized.  Berg, 219 F.3d at 276.  The plaintiff must further demonstrate "a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation."  City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Ultimately, however, where the plaintiff was not subject to any unconstitutional conduct, there is no basis for holding the municipality liable under 42 U.S.C. § 1983 ("Section 1983").  City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (explaining that if a person has suffered no constitutional injury at the hands of an individual officer, the fact that municipal regulations allegedly may have authorized conduct in violation of the Constitution is "quite beside the point"); Startzell v. City of Philadelphia, 533 F.3d 183, 204 (3d Cir. 2008)(because no violation of the plaintiff's constitutional rights was shown, there was no need to reach the Section 1983 claim against the city, and that claim was properly dismissed).

Here, as set forth above, the federal claims asserted in Counts IV, V, VI, and VII are legally insufficient to demonstrate any violation of Plaintiff's constitutional rights.  As such, the 42 U.S.C. § 1983 claims asserted against the City in those counts fail as a matter of law and should be dismissed with prejudice pursuant to Rule 12(b)(6).

**H.**     **Plaintiff's claims for violation of his rights under the Pennsylvania Constitution are not actionable.**

The courts of Pennsylvania have never recognized a cause of action for damages arising out of alleged violations of the Pennsylvania Constitution.  Jones v. City of Philadelphia, 890 A.2d 1188, 1208 (Pa. Commw. 2006)("To date, neither Pennsylvania statutory authority nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution.")(cited by Moss v. Pennsylvania, 838 F. App'x 702, 708 (3d Cir. 2020); Walker v. Wetzel, No. 22-1357, 2022 U.S. App. LEXIS 25182, at *8 (3d Cir. Sep. 8, 2022)).  As this Court has observed, "Pennsylvania law does not include a statutory equivalent to 42 U.S.C. § 1983, which provides a cause of action for damages because of a federal constitutional violation. Moreover, the question of whether the Pennsylvania Constitution provides a cause of action for damages is uncertain."  Underwood v. Beaver County Children and Youth Services, 2005 U.S. Dist. LEXIS 23012, at *6-7 (W.D. Pa. 2005)(Hardiman, J.).

The federal district courts of Pennsylvania have therefore declined to exercise supplemental jurisdiction over claims seeking monetary damages for violations of the Pennsylvania Constitution, because the availability of such damages presents a "novel or complex issue of state law."  See, e.g., Laughman v. Pennsylvania, 2006 U.S. Dist. LEXIS 15841  (M.D. Pa. 2006) (citing Mitchell v. Street, 2005 U.S. Dist. LEXIS 17156 at *16-18 (E.D. Pa. 2005)).

Accordingly, Defendant respectfully submits that any claims Plaintiff purports to assert under the Pennsylvania Constitution, including such allegations contained in Counts IV and V, are not actionable and should therefore be dismissed with prejudice as a matter of law.

I.    **Plaintiff's claims for punitive damages against the City are not cognizable under federal or state law with respect to any of the claims asserted in the Complaint.**

It is well-established that municipal entities are immune from punitive damages under 42 U.S.C. § 1983, as well as under Pennsylvania law.  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 266 (1981); Gares v. Willingboro Twp., 90 F.3d 720, 729 (3d Cir. 1996); Waltz v. County of Lycoming, 974 F.2d. 387 (3d Cir. 1992); Pahle v. Colebrookdale Twp., 227 F.Supp.2d 361, 367 (E.D. Pa. 2002); Washco v. Darby Borough Police Dept., 688 F. Supp. 1026, 1027 (E.D. Pa. 1988)(citing City of Newport, 453 U.S. 247); Feingold v. Southeastern Pennsylvania Transp. Auth., 517 A.2d 1270, 1276-77 (Pa.  1986).

Accordingly, all claims for punitive damages asserted in the Complaint should be dismissed with prejudice as a matter of law.

J.    **Plaintiff's claims for attorney's fees with respect to the state law claims asserted in Counts I, II, III, and VI are not cognizable.**

Under the well-established law of Pennsylvania, claims for attorney's fees generally are not cognizable.  The Pennsylvania Supreme Court has explained that it "has consistently followed the general, American rule that there can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established exception."  Merlino v. Delaware County, 728 A.2d 949, 951 (Pa. 1999)(citing cases); see also DiGregorio v. Keystone Health Plan E., 2003 PA Super 509 at P32,  840 A.2d 361, 371 (Pa. Super. 2003)("[A]bsent a fee-shifting statutory or contract provision to the contrary, …parties to a dispute are responsible for their own attorneys' fees.")

Plaintiff has failed to identify any statutory provision or contract permitting the recovery of attorneys' fees in relation to his state law claims.  Accordingly, all such claims for attorneys' fees should be dismissed with prejudice as a matter of law.

Respectfully submitted,

**THOMAS, THOMAS & HAFER, LLP**


By: /s/ *Karin M. Romano*
       Suzanne B. Merrick / Pa. ID 47724
       Karin M. Romano / Pa. ID 92068

       smerrick@tthlaw.com
       kromano@tthlaw.com

       US Steel Tower
       600 Grant Street, Suite 2600
       Pittsburgh, PA  15219
       (412) 697-7403

       *Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing document was served upon counsel below via electronic mail, on this 31st day of August, 2023.

Greta M. Kiser, Esquire
Huwar Kiser Law Offices, P.C.
greta@huwarlawoffices.com

*Counsel for Plaintiff*

**THOMAS, THOMAS & HAFER LLP**

*/s/  Karin M. Romano*