**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHLOMO DOTAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:23-181 |
| | ) | Judge Nora Barry Fischer |
| CITY OF ALTOONA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION; PROCEDURAL HISTORY**

In this case, Plaintiff Shlomo Dotan ("Dotan") brings multiple claims against Defendant, City of Altoona ("Defendant" or "the City"). As set forth in the July 13, 2023 Complaint filed by Plaintiff's then-counsel in the Court of Common Pleas of Blair County, Pennsylvania (Docket No. 1-1)[1] and removed to this Court the following month (Docket No. 1), said claims arise from a long history of real estate code enforcement proceedings (including inspections, notices/citations, adjudications/hearings/convictions, fines/penalties, condemnation notices (mailed and posted), and one ultimate demolition) regarding three (3) properties owed by Plaintiff within the purview of the City's Property Maintenance Code (the "Code"), and decided in Defendant's favor.[2]

---

[1] The action was commenced on September 15, 2022 by praecipe for write of summons.

[2] In particular, the Complaint (which is littered with blanket averments and conclusory and/or speculative allegations lacking a factual basis) alleges – with no citation to the particular law under which a count is brought, or factual allegations clearly addressing elements of a given asserted claim – the following: Negligence, Interference With Contract, Abuse of Process, Substantive Due Process, Equal Protection, False Imprisonment and Eminent Domain (apparently intended as a Fifth Amendment taking claim). (Docket No. 1-1 at ¶¶ 129-182).

As a fundamental precept of pleading sufficiency, when a plaintiff fails to allege facts showing all elements of a claim, bald assertions and speculation cannot establish a cognizable claim in their place. *See* Section III, *infra*.

In the approximately 21 months following the August, 2023 removal of this action and 19 months following withdrawal by Plaintiff's counsel:

The case (which was to include an Amended Complaint filed by October 16, 2023) was initially stayed for 30 days to provide Plaintiff opportunity to obtain new counsel (he has not). At telephone conferences in November, 2023 and January, 2024, Plaintiff remained unprepared to proceed and was afforded further time; and in March, 2024, the Court adopted Defendant's proposed scheduling order as provided in the Rule 26(f) Report and delayed entry of an ADR order, again to allow Plaintiff more time. (Docket Nos. 22-24). The extended due date for an Amended Complaint and the July 31, 2024 discovery deadline passed, the Post-Discovery Status Conference ("PDSC") was postponed, and – despite notice by the Court and additional attempts to reach him - Plaintiff failed to participate in the rescheduled October, 2024 PDSC.[3] (Docket No. 27). Following the February, 2025 reassignment of his action, Plaintiff was directed to show cause why this action should not be dismissed for failure to prosecute, and the case was again stayed. Plaintiff's two-page Response was literally a day late and a penny short, as it briefly reiterated some complaints, mentioned new ones, but provided no explanation/evidence in support of the Court's excusing his failure to advance his litigation. (Docket Nos. 29 and 30).[4]

Presently before the Court is Defendant's renewed Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), together with its Brief in Support, Plaintiff's Response in Opposition and Defendant's Reply. (Docket Nos. 32, 33, 36, 37).[5] The motion is ripe for review.

---

[3] At the Court's request, Plaintiff provided a current email, telephone number and mailing address at the January, 2024 conference. Nonetheless, Defense counsel attested that her multiple attempts to reach Plaintiff in advance of the October, 2024 PDSC went unanswered. (Docket No. 27).

[4] *See also* Docket No. 34 (Defendant's Response to the Order to Show Cause).

[5] Defendant avers that all claims excepting Counts IV and VII (to the extent they relate to the September 2021 demolition) are time-barred; Counts I-III and VI are barred by Defendant's immunity under Pennsylvania's Political Subdivision Tort Claims Act (the "PPSTCA"); and Count VI also fails to state a plausible claim under the requisite

After thorough review of Plaintiff's Complaint and other evidence properly considered on this motion,[6] the Court finds Plaintiff's claims to be (a) barred by the applicable statute of limitations and/or Defendant's immunity under Pennsylvania's Political Subdivision Tort Claims Act (the "PSTCA"), and/or (b) misguided as to a factual basis/the necessary elements for a cause of action alleged (including those of a §1983 claim under *Monell*). As it further finds that (a) Plaintiff fails to allege facts sufficient to ground plausible liability for a cause of action under any count of the Complaint, or a reasonable expectation that discovery would reveal evidence of the requisite elements, and (b) this failure could not be remedied by further leave to amend, Defendant's Motion to Dismiss will be granted.

## II.  FACTUAL BACKGROUND

The following summation is taken from Plaintiffs' Complaint/averments, documents integral to and/or expressly relied upon therein and/or matters/facts properly subject to judicial notice. The Court assumes Plaintiff's allegations are true for purposes of the present motion. *See Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016). *See* Section III, *infra*.

Plaintiff's claims are based upon alleged actions taken by Defendant between 2016 and 2021 in relation to the City's enforcement of its Property Maintenance Code with respect to three properties: a residence/"office" at 315 Aldrich Avenue (the "Aldrich Ave." property), a rental property at 311 25th Street (the "25th St." property), and a rental property at 909 27th Street (the "27th St." property).

---

elements, as do Plaintiff's §1983 claims under Counts IV, V and VII. *See* Docket No. 33; *see also* Docket No. 37 (Defendant's Reply).

[6] *See* Section III, *infra*.

Defendant's Code (Docket No. 33-4), adopted from the International Property Maintenance Code, sets forth detailed policies and procedures regarding inspections, notice and prosecution of violations (including proceedings before a Magisterial District Judge), blighted properties, residential rental dwellings, vacant buildings, penalties for failures to comply or abate (including fines and imprisonment), assessments of costs of abatement and reinspection fees to owner, postings of placards of condemnation, and compliance with other international and national codes. The Court notes that the Code specifically provides (a) that each day a violation continues in non-compliance is deemed a separate offense (106.4); (b) for placement of a lien on the property for costs of abatement or removal of a nuisance (106.5); and (c) procedures for written application of appeal of a notice/order/decision under the Code (111.1).

### The 27th St. Property

Plaintiff's troubles with Defendant began in September, 2016 when a neighbor allegedly called in a complaint regarding the condition of the 27th St. property (particularly, its exterior/deteriorated paint) and the City's responsive drive-by inspection resulted in its issuance of a letter notifying Plaintiff of four (4) violations.[7]  Prior to the given correction deadline of June 17, 2017, Defendant issued Plaintiff six additional citations,[8] none of which he received; but Plaintiff *did* receive the City's Complaint filed with the Magistrate Judge, attended the scheduled municipal court hearing, and was found guilty of five of the six offenses. Subsequent to June 17, 2017, Plaintiff

---

[7] Plaintiff asserts he did not receive this letter but later learned of it and requested a copy received on May 11, 2017. However, he also attests that by February 28, 2017 he had addressed all issues noted in the letter but the exterior repainting (*i.e.*, Plaintiff acknowledges that he was aware of the violations for which he was cited prior to February 28, 2017).  He also attests that at the time he had a neglectful tenant, who had accumulated a large amount of trash/debris on the property exterior, and whom Plaintiff eventually successfully evicted.  Be that as it may, Plaintiff acknowledged a state of neglect, disrepair and unsanitary/hazardous conditions at the property, in violation of City Code provisions to which it was subject.

[8] Plaintiff attests the citations were issued without reinspection despite his request, but acknowledges that the exterior painting remained undone and does not preclude that the citations were also for new/different exterior violations.

continued to receive three more citations, had not yet completed the repainting required the prior Autumn, and was found guilty of one violation (two having being withdrawn) in February, 2018.[9] In late June, 2018, the 27th St. property was condemned and notice was duly posted, but it was later released from condemnation.  In January 31, 2019, it was, however, re-posted for condemnation and Plaintiff was issued a $500 vacant property fee (which he contests was issued less than the requisite 30 days from when the tenant vacated).

The Magisterial District Judge docket indicates that Plaintiff was then charged with failure to demolish the 27th St. property on July 7, 2020, with a related citation filed on August 12th.  On September 1, 2020 the City Planning Commission issued a Resolution setting forth its Declaration of the property as blighted and a "nuisance" under provisions of the Code and ordinance (as to which Plaintiff's appeal period had been noticed and had tolled).[10]  Said docket also indicates that the disposition proceeding, a summary trial at which Plaintiff was present, occurred on October 1,

---

[9] Although Plaintiff avers that he was initially unable to comply with repainting "in the winter" of 2016-17, he makes no averment as to his continued failure to comply with the code violation correction issued in September 2016.  And although his averments reflect, *in toto*, that Plaintiff was suffering under financial constraints, including those from tenant eviction(s) and mortgage lender foreclosure(s), they also indicate that he elected to retain ownership of the properties at issue.

[10] Plaintiff provides a photocopy of a business envelope sent to him by Defendant's Department of Community Development on September 2, 2020  and stamped "Return to Sender, Dotan Shlomo, Box Closed, Unable to Forward" and "Received October 19, 2020".  Docket No. 36-1.  The exhibit indicates that an item of correspondence was unable to be delivered due to Plaintiff's (a) failure to provide a forwarding address when he closed the post office box which (b) he failed to correct as no longer a valid address for official correspondence regarding properties for which he was required to maintain a valid address of record (precisely to facility governmental procedures for, e.g., reasonable notice). *Cf. Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ("Due process in a proceeding to be accorded finality requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); *Button v. Snelson*, 2016 WL 1252784, at *11 (M.D. Pa. Mar. 23, 2016)  (noting the focus "is on the adequacy of the remedial procedure, and not on the government's actual actions that allegedly deprived the individual of his liberty or property interest"). *Cf.* Docket No. 36 at 1-2 (asserting that the envelope "demonstrates that notice [of the demolition] was never served on Plaintiff")  To the extent the envelope date suggests the mailing may have enclosed a copy of the Resolution, the Court notes that the facts properly submitted and considered indicate Plaintiff participated in the October 1st hearing on that Resolution before the Magistrate Judge, and such facts do not suggest that Plaintiff raised any objection/impediment to proceeding, nor that he in any way later appealed his October 1, 2020 conviction for failing to demolish the 27th St. rental building as ordered.

2020, at which time he was found guilty. Docket No. 32-3 at 1-2.[11]  Slightly more than one year thereafter, on September 16, 2021, the 27th St. rental property was razed.  On September 23, 2021, Defendant entered a municipal lien for demolition costs incurred in the amount of approximately $9,000 in  Blair County's  Court of Common Pleas at No. 2021 GN 3085.  *See* Docket No. 33-1 to 33-4, Docket No. 33 at 18-21.  *See also generally* Docket No. 1-1.[12]

### The 25th St. Property

This rental property was inspected by Defendant on February 15, 2017, found to be unregistered and cited for 12 Code violations by a City inspector.  Plaintiff alleges he did not receive the citations but did receive notice of the hearing, which failed to identify the property to which it pertained.[13]  Plaintiff participated in the hearing and was convicted on 10 violations.  Plaintiff

---

[11] As noted in Docket No. 33 at 24:

> Section 110 provides that if an owner of real property fails to comply with a code official's order to demolish a structure, "the Code Official *shall* cause the structure to be demolished and removed ....  and the cost of such demolition and removal *shall* be charged in full against the owner of such structure…" (emphasis added).

*Id.* (referencing Docket No. 33-4, City of Altoona Code, Chapter § 550; § 550-1 adopting International Property Maintenance Code, 2018 Edition; § 550-2 "Additions, Insertions and Changes at 110-3).

[12]  Defendant's Brief in Support further notes that:

> The Resolution reflects that the subject property was found to be blighted under specified provisions of the City ordinance governing blight, including findings that the property's physical condition rendered it a public nuisance, as well as an attractive nuisance to children. . . . The Resolution states that the property "shall in no way be acquired by any public sector agency," and that the Redevelopment Authority "has not been nor will be involved in any way." *Id.* The Resolution ultimately recommended that the site be razed and that the appropriate reuse of the property is residential in nature. *Id.*

And it requests that the Court take judicial notice of the Resolution, Court record and Municipal Lien, all matters of public record, submitted – which the Court does.  *See* Docket No. 33 at 20; Section III, *supra*.  *See also* Docket No. 33 at 24 (concluding that, on the facts of public record, "Plaintiff cannot plausibly claim that he had no notice of the planned demolition."); *infra* n. 17.

[13] Although Plaintiff now complains that lack of notice and failure to identify the property address impeded his ability to prepare for this hearing, there is no allegation that Plaintiff took any steps (such as contacting the appropriate municipal or magistrate's office regarding, *e.g.* (a) identifying the property if necessary, (b) correcting an address record error or (c) raising/addressing reasonable concerns regarding impairment of his ability to provide hearing evidence occasioned by some fault of the municipality).

6

further alleges that because the inspector advised the tenant to withhold rent until the property was registered and violations corrected, Plaintiff was forced to commence eviction proceedings and obtain a $4,400 judgment, which he was unable to collect. *See generally* Docket No. 1-1; *see also* Docket No. 33 at 3-4.

### The Aldrich Ave. Property

This property is identified as Plaintiff's primary residence, but he also alleges that beginning in 2016 he used the property as an "office" and had the water service disconnected as he did not need it for solely office use of the property.  In October, 2016, Defendant noted the water shutoff, concluded the property was vacant, and sent Plaintiff Vacant Property Registration and Property Maintenance Reinspection fee billings.  In August 8, 2018, Defendant provided Code enforcement notice to Plaintiff requiring the property be boarded as vacant and on October 19th it posted a Vacant Notice on the property.  Plaintiff alleges both that the Aldrich Ave. property was well maintained and he was using it frequently as his office *and* that it was vacant by October as the mortgage lender had initiated foreclosure proceedings (which were later terminated) and barred him from the property.  He further alleges that on October 19, 2018, Defendant issued three related Code violation citations and judgements and fines were entered, as to which he filed an appeal.[14]  *See generally* Docket No. 1-1; *see also* Docket No. 33 at 4.

---

[14]  With the exception of the three 2018 vacancy fines regarding the Aldrich Ave. property, Plaintiff makes no allegation that he filed any administrative/court appeal or took other similar action raising defenses or challenges to the Defendant's processes for determinations of code violations, including the 27th St. failure to demolish and condemnation proceedings, against him. *See., e.g.* Section II, *supra* (noting opportunity for appeal following issuance of August 2020 citation for failure to demolish)  *Cf. Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate."); *id.* ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.").

### III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain enough facts to state a claim to relief that is plausible on its face." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Plausibility exists somewhere between "possible" and "probable." The former necessitates factual allegations that are "more than merely consistent with a defendant's liability." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). But the latter only demands that the court be able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1937 (citations omitted). Detailed allegations are not necessary to survive a Rule 12(b)(6) motion to dismiss, however, the complaint must contain "more than labels and conclusions" or "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citations omitted).

The United States Court of Appeals for the Third Circuit has instructed the district courts to utilize a three-step process in evaluating a Rule 12(b)(6) motion to dismiss. *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022). First, the court must set out the elements of the plaintiff's claim; second, identify and disregard any "formulaic recitation of the elements" or allegations that are "so threadbare or speculative" as to amount to nothing more than mere conclusory statements; and, finally, evaluate "the plausibility of the remaining allegations" by assuming their veracity and "construing them in the light most favorable to the plaintiff[.]" *Id.* at 327-328 (alteration, internal quotation marks, and citations omitted). In addition, courts must draw all reasonable inferences in favor of the plaintiff. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790-791 (3d Cir. 2016). However, the "the presumption of truth attaches only to those

allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*(cited in *Joyce Outdoor Advert. Wallscapes, LLC v. City of Scranton*, 2024 WL 4900015, at *6 (M.D. Pa. Nov. 26, 2024)).

The ultimate plausibility determination, in turn, is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87, quoting *Iqbal*, 556 U.S. at 679. As the Third Circuit has repeatedly held, consideration of the "context" for a plausibility determination necessarily includes analysis of the law governing the claim at issue. *See, e.g.*, *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 183–84 (3d Cir. 2024) ("When assessing the sufficiency of the complaint, we pay attention to the context of the claim, including the underlying substantive law.").[15]

In addition to the complaint, courts may consider matters of public record[16] and other matters of which they may take judicial notice,[17] court orders, and exhibits attached to the complaint

---

[15] When dismissing a civil rights action claim pursuant to Rule 12(b)(6), the Court permits a curative amendment unless it would be inequitable or futile. *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

[16] *See Pension Ben. Guar. Corp. v. White Consol. Industries, Inc*., 998 F.2d 1192, 1196 (3rd Cir.1993) (public records have included dispositions of criminal cases, decisions of government agencies, and published reports of administrative bodies); Fed.R.Civ.P. 12(d).

[17] The court may take judicial notice of certain facts, as well as undisputedly authentic documents if the claims are based upon these documents. *See e.g., Pension Ben. Guar. Corp. v. White Consol. Industries, Inc*., 998 F.2d 1192, 1196 (3rd Cir. 1993) (parties' purchase and sale agreement upon which complaint was based could be judicially noticed); *Mayer v. Belichick*, 605 F.3d 223, 230 (3rd Cir. 2010). A judicially noticed fact is one that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b).

Thus, in taking judicial notice of, *e.g.*, earlier proceedings such as those giving rise to the subject litigation, a court notices the filings/proceedings/rulings therein, as the accuracy thereof is not reasonably in dispute. In contrast, a court may decline to take notice of exhibits, *e.g.*, newspaper articles, when statements contained therein are frequently disputed or inadequately contextualized. *See Hynoski v. Columbia Cnty. Redevelopment Auth.,* 941 F.Supp.2d 547, 555–57 (M.D. Pa. 2013). *Compare* Exhibits 32-1 through 32-4 (Defendant's September 1, 2020 Resolution Declaration of Blight regarding Plaintiff's property at 909 27th Street; Municipal Lien entered regarding costs of September, 2021

when adjudicating a motion to dismiss under Rule 12(b)(6) without converting said motion into one for summary judgment. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); *Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2004); *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990)).[18]

Finally, the Court notes that although Plaintiff now proceeds *pro* se, the Complaint was the work product of his then-attorney. *Cf. Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).[19] Although the Court has nonetheless considered it with liberality (and even were the case proceeding *pro se* from its inception), Plaintiff is *no*t relieved of his obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g.*, *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).

## IV.    ANALYSIS

For one or more of the reasons set forth below, all of Plaintiff's claims are subject to dismissal:

---

demolition of said property; Magisterial District Judge 24-1-02 Docket reflecting related Municipal Code Enforcement events 2017-2021; and Defendant's Property Maintenance Code (Section 550-1)) *with* Exhibit 36-1 (blurred and partial copy of a newspaper article regarding identifying potential building sites and mentioning, without other context, an undemolished home with more code inspections than the 27th St. property).

[18] *See also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (noting that "a document integral to or explicitly relied upon in the complaint may also be considered without converting the motion to dismiss into one for summary judgment."); *Golden v. Cook*, 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publicly available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'").

[19] *Cf. Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs., L.P.,* 785 F.3d 96, 102 (3d Cir. 2015) (quoting *Link v. Wabash R.R. Co*., 370 U.S. 626, 633-34 (1962) ("parties cannot 'avoid the consequences of the acts or omissions of [their] freely selected agent[s]. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent[.]' ")) (alterations in original)*; Harris v. Kellogg, Brown & Root Servs., Inc.*, 2016 WL 4720058, at *2 n.1 (W.D. Pa. Sept. 9, 2016).

### A. Statutory Time-Bar

The Third Circuit permits a defendant to assert the statute of limitations defense via a motion to dismiss pursuant to Rule 12(b)(6) when the dates alleged show that the cause of action has not been brought within the applicable limitations period, i.e., where it is apparent on the face of the complaint that the claims asserted therein are time-barred. *Robinson v. Johnson,* 313 F.3d 128, 135, n.3 (3d Cir. 2002); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 (3d Cir. 1994).

As noted in Section IV(B) below, both Plaintiff's Federal civil rights and Pennsylvania state law claims regarding his properties are subject to Pennsylvania's two-year statute of limitations. *See* 42 Pa. Cons. Stat. Ann. § 5524(4); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78–79 (3d Cir. 1989). The two-year period begins "when the injury is sustained" or "when the plaintiff knew or should have known of the injury upon which the action is based." *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006) (applying Pennsylvania law); *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (applying federal law). Plaintiff's awareness triggers a duty to assert his rights in a timely fashion. *See, e.g. Budzash v. Howell Twp.*, 451 F. App'x 106, 110 (3d Cir.2011). Here, Plaintiff not only did not avail himself of opportunities to appeal/challenge enforcement actions provided in the Code, or a given Ordinance or notice, he also delayed in filing his Complaint.

Plaintiff filed his praecipe in this action on September 15, 2022 - and his Complaint ten months later, on July 13, 2023. Thus, all allegedly unconstitutional or tortious conduct prior to September 15, 2020 is time-barred.  As Plaintiff's pleading indicates, all of the conduct and events now complained of occurred and were reasonably known to him prior to that date and are subject to dismissal on this basis, with the exception of those regarding the demolition of the 27th St.

property on September 16, 2021 and the municipal lien for demolition cost issued one week thereafter.  (*Cf.* Docket No. 33 at 10).

### B.  Counts IV, V and VII - Section 1983 Claims

Pursuant to 42 U.S.C. § 1983, private citizens are afforded a means to redress violations of federal law by state actors.  Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of federal law.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996).  To establish a Section 1983 claim, a plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  *Id.* (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995)).[20]

### 1.  Municipal Liability Under *Monell*

The Supreme Court of the United States has established that municipalities such as Defendant are among those "persons" subject to liability under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Under the *Monell* doctrine, "[a] municipality is liable under § 1983 when a plaintiff can demonstrate that the municipality itself, through the implementation of a municipal policy or custom, causes a constitutional violation."  *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 174-75 (3d Cir. 2017).  A municipal policy is established when someone with final authority issues an "official proclamation, policy, or edict" on behalf of the municipality. *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir.1990); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). A plaintiff can establish a custom by showing a course of

---

[20] The statute of limitations for § 1983 actions is drawn from the general or residual statute of limitations for personal injury actions in the state where the case is brought. *Owens v. Okure*, 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). Here, Pennsylvania's two-year statute of limitations for personal injury actions governs. 42 Pa.C.S.A. § 5524; *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3rd Cir.1998).

conduct by municipal officials that, although not formally authorized, "is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

"A plaintiff must identify the challenged policy [or custom], attribute it to the [municipality] itself, and show a causal link between execution of the policy and the [Constitutional] injury suffered." *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 51 (3d Cir. 1985).[21] If the policy or custom does not violate federal law on its face, "causation can only be established by 'demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequence.'" *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)).

The Complaint's (often bald, conclusory or speculative) allegations do not state a cognizable claim that a municipal policy or custom, adopted or promulgated by Defendant (*e.g.*, its property maintenance code) caused Plaintiff constitutional harm.[22] Nor do they, *e.g.*, sufficiently allege a claim that "an official with authority ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes." *See McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005).[23] *Cf. Tripodi v. N. Coventry Twp.*, 2013 WL 4034372, at *6-7 (E.D. Pa. Aug. 8, 2013), *aff'd*, 616 Fed.Appx. 521 (3d Cir. 2015) (where plaintiff "has not pleaded any facts suggesting the

---

[21] *See also Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir. 1990) (plaintiff must show a plausible nexus or affirmative link between the municipality's custom and the specific deprivation of constitutional rights at issue); *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

[22] A municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007).

[23] A municipality cannot be liable under Section 1983 for the acts of its employees on the basis of *respondeat superior*. *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell*).

Township maintains a policy or custom of prosecuting code violations that have already been abated . . . she has failed to state a § 1983 claim against the Township"); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (explaining that if a person has suffered no constitutional injury at the hands of an individual officer, the fact that municipal regulations allegedly may have authorized conduct in violation of the Constitution is "quite beside the point").

Where, as here, the plaintiff was not subject to any unconstitutional conduct, there is no basis for holding the municipality liable under § 1983. *See, e.g. Startzell v. City of Philadelphia*, 533 F.3d 183, 204 (3d Cir. 2008) (because no violation of the plaintiff's constitutional rights was shown, there was no need to reach the Section 1983 claim against the city, and that claim was properly dismissed. And as discussed in Section IV(B)(2) below, the Court finds (while largely concurring with Defendant's analysis) that Plaintiff's federal civil rights claims – of substantive due process, equal protection or takings compensation (Counts IV, V and VII) - are legally insufficient to state a violation of Plaintiff's constitutional rights and thus subject to dismissal.[24]

## 2.  Failures to State a Cognizable Constitutional Violation

The Court observes the Complaint's failure to state a claim of an underlying constitutional violation  in any of the three causes of action raised as follows:

---

[24] The Court also observes that the facts alleged in the Complaint and properly considered under the pending motion, rather than plausibly suggesting that Defendant's actions proximately caused Plaintiff unconstitutional harm. indicate that: Defendant enacted and enforced its property maintenance code, for several years Plaintiff was repeatedly charged and found guilty of violating same, and Defendant duly applied/imposed notice, process, penalties and consequences specified in the Code, related/adopted ordinance, and enforcement provisions. *Cf. Tripodi*,  2013 WL 4034372, at *1 (noting, in dismissing action for sale of apartment complex following unabated violations, that "plaintiff failed to take reasonable measures to bring property into compliance, rented apartments without curing defects, [and] failed to make payments on costs/fees as ordered by [District Magistrate]"); *id.* (noting that building had been found to be "seriously deteriorated, in a blighted condition, and [to] constitute a public nuisance").

**(a) Equal Protection**

As to Count V, Equal Protection, the Fourteenth Amendment provides, in relevant part, that no state shall "deny any person within its jurisdiction the equal protection of the laws" and this is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Cent.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Plaintiff, however, does not state a claim for violation of the Equal Protection clause when he merely makes a blanket/boilerplate allegation that he has been treated differently from others similarly situated, because he was subjected to selective and "improperly motivated" enforcement actions, without "valid reason". (Docket 1-1 at ¶¶ 158-59).[25] At the least, the Complaint must identify similarly situated persons/properties (*i.e.*, those "alike in all relevant aspect") and plausibly allege that the Defendant treated Plaintiff differently with no rational basis. *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008); *Pro Dog Breeders Advisory Council, Inc. v. Wolff*, 752 F. Supp 2d. 575, 586 (E.D. Pa. 2010); *Stradford v. Sec. Pennsylvania Dept. of Corrections*, 53 F.4th 67, 77 (3d Cir. 2022). *See also Rubie v. Mayor & City Council of Baltimore*,  2003 WL 25575661, at *9 (D. Md. Jan. 28, 2003) (dismissing equal protection claim where plaintiffs, whose apartment building city demolished as one among many deemed unsafe/unfit, did not indicate how building condition at time of razing differed from that of others, and enforcement history (notices, orders, continued

---

[25] *See also* Docket No. 33 at 15-16 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *id.* ("In asserting a violation of equal protection, a plaintiff cannot rely upon "conclusory, boilerplate language" or "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" to survive dismissal.") (citing *Young v. Delaware County Community College*, 2008 U.S. Dist. LEXIS 72573, at 9 (E.D. Pa. 2008), citing *Young v. New Sewickley Twp.*, 160 Fed. Appx. 263, 266 (3d Cir. 2005) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir.2005)).

The Complaint makes further allegations that Defendant acted from malice, bad faith, and a desire to punish and injure Plaintiff, because it "disliked" him; occasionally in the course of its pages the Complaint also suggests that Defendant held an antisemitic animus toward him.  These allegations are equally devoid of supportive factual specificity.  (Docket 1-1 at ¶¶ 159-160).

failure to abate) belied any assertion they were in compliance); *id.* (noting that plaintiffs "offer[ed] no *comparanda* outside their class").[26]

### (b) Eminent Domain/Takings Clause/Substantive Due Process

Count VII, headed "Eminent Domain", is (as are some other counts) misnomered. Defendant did not, *e.g.*, decide to build a road or construct a park over Plaintiff's property through its exercise of "eminent domain" proceedings. Plaintiff's Count VII appears intended to raise a Takings Clause violation, as it alleges a condemnation of the 27th St. rental housing (as a blight/nuisance) under Defendant's Code - without resort to the eminent domain process and without just compensation - to have been a constitutional violation. The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation" and it applies to state action through the Fourteenth Amendment. U.S. Const. Amend. V; *Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 370 (3d Cir. 2012).

Although "[t]he paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property",. . . . "[g]overnment regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster [and] such 'regulatory takings' may be compensable under the Fifth Amendment." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005).[27] An initial step in any takings analysis is whether the challenged governmental action advances a legitimate public interest. And a

---

[26] To the extent Plaintiff intended the partial photocopy of a page of a local newspaper article containing a picture of another property (of unidentified ownership) said to have more code violation citations (for unidentified reasons, with unidentified responses, over an unidentified period of time) to stand in stead for the requisite pleading in support of this claim, it could not. *Cf.* Docket No. 36 at 2-4 (setting forth full context of article and record of enforcement proceedings culminating in owner's forfeiture of that property for rehabilitation/resale by $1 quit claim deed); 36-1 through 36-5 (full article and supportive public records provided as exhibits).

[27] The Court notes that a plaintiff need not have exhausted his state administrative remedies prior to bringing a Fifth Amendment takings claims. *Knick v. Township of Scott*, 139 S. Ct. 2162, 2170 (2019). It also notes that it need not address applicability of a longer statutory time bar, as the challenged municipal action occurred within the generally applicable two-year statute of limitations.

municipality such as Defendant may regulate the use of property in its jurisdiction to promote the public good. *See e.g.*, *Heine v. City of Garfield*,  2019 WL 581344 (D.N.J. Feb. 13, 2019) (citing *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978)).

To the extent Plaintiff intends to allege a violation of § 1983 under the Takings Clause, the Complaint fails to state a claim, as it sufficiently alleges neither that (a) Defendant passed any law/regulation so onerous as to, *e.g.*, deprived him of "all or substantially all beneficial use of" his property, nor (b) Defendant's condemnation of said property lacked a legitimate public interest (*e.g.* as a regulation of property to promote health, safety and general welfare). *See Munoz v. City of Union City,* 481 F. App'x 754, 759 (3d Cir. 2012).[28]  *See generally*, *e.g.*,  *Singh v. Droppa*, 2023 WL 3689565, at *5 (D.N.J. May 26, 2023) (citing *Pinkowski v. Twp. of Montclair*, 691 A.2d 837, 845 (1997)).

Defendant's condemnation of the 27th St. property as a protractedly unabated "blight" under Code provisions prohibiting dangerous, dilapidated and/or unsanitary conditions (following notices, condemnation posting on said property, and Declaration/enforcement proceedings with opportunity for appeal) is not a confiscation of that property for public use requiring compensation.  *See e.g., Ituah v. City of Philadelphia,* 2023 WL 7311182, at *4 (E.D. Pa. Nov. 6, 2023), *aff'd,* 2024 WL 3177770 (3d Cir. June 26, 2024) ("[P]roperty is not 'taken' where a city or other appropriate public authority has acted pursuant to its right and obligation to ensure public safety in remediating a

---

[28] As the Third Circuit explained in *Munoz* (an action for demotion of a rental building):

> [T]he Takings Clause asks not whether the plaintiff's most profitable use of the property has been destroyed. A Takings Clause claim cannot lie where the plaintiff was not deprived of all beneficial uses of his property. *See Andrus v. Allard*, 444 U.S. 51, 65-66, 100 S.Ct. 318, 62 L. Ed. 2d 210 (1979). [Plaintiff] concedes that he retains a possessory interest in the property. Indeed, [Plaintiff] is still entitled to put the property to any number of beneficial uses. The record reflects that [Plaintiff] simply lacks sufficient funds to do so, at present. Even if [the city official] was without authority to order the demolition, [Plaintiff's] continuing possessory interest in the property prevents him from establishing a Takings Clause violation.

dangerous condition."); *In re 106 N. Walnut, LLC*, 447 F. App'x 305, 308 (3d Cir. 2011) (citing *Pinkowski*, *supra*, with approval); *id.* at 308-09 (finding that where municipality's declaration of blight and demolition were based on legitimate purpose of abating "an unsafe condition and public eyesore", compensation under the Takings Clause was not available) (citing *City of Paterson v. Fargo Realty, Inc*., 415 A.2d 1210, 1212 (1980)); *id.* (finding, where vacant property held value and plaintiff was not constrained by city from rebuilding demolished structure, that he was not deprived of "all economically beneficial use").[29] *See also* Docket No. 33 at 18-21; *id.* at 19 (citing *3909 Realty LLC v. City of Phila*., 2021 U.S. Dist. LEXIS 106941, at *14 (E.D. Pa. June 8, 2021) (granting motion to dismiss where city demolished building and asserted lien, holding that plaintiffs had not pled an actionable claim "because the City demolished the Property pursuant to its power to abate a public hazard and because Plaintiffs have retained possession and beneficial use of the Property").

Alternatively, to the extent the Complaint raises, in Count IV, a Fourteenth Amendment substantive due process claim as to the demolition of the 27th St. property, the result is the same – it fails to state a cognizable claim. Facts alleged in the Complaint and properly considered by the Court (*see* discussion at Sections II and III, *supra*) fail to plausibly support blanket allegations of impropriety and demonstrate that Defendant was acting pursuant to its Code and related ordinances, including as to corrective notices, orders, fines/assessments and other authorized acts of enforcement. *See* Docket No. 36 at 1-2. Moreover, in assessing a substantive due process claim that challenges a municipal taking of property, the court applies a "shocks the conscience" standard.

---

[29] *See also Heine*, 2019 WL 581344, at *8 (noting, in dismissing plaintiff's section 1983 due process, takings and other claims, that plaintiff previously raised "substantially all the same arguments" in her tax court appeal, i.e., "that the Property had been effectively condemned and deprived of value"); *id.* ("In upholding the tax assessment, the state court rejected Plaintiff's arguments noting that she had failed to take any action to affect the necessary repairs."); id. at *5 ("It was not, as the plaintiff maintained, the actions of the City that prohibited her from using the subject property. The City instead prohibited plaintiff from using the property in an illegal and legally impermissible manner.").

See *United Artists Theatre Circuit, Inc. v. Township of Warrington, PA*, 316 F.3d 392, 399–401 (3rd Cir. 2003); *Whittaker v. County of Lawrence*, 437 Fed.Appx. 105, 109 (3rd Cir.2011); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ("the substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'") In cases (such as the instant matter) arising from land-use decisions, this standard requires more than bad faith or improper motive, and precludes a district court from acting as a zoning board of appeals. *See United Artists Theatre.*, 316 F.3d at 399, 402 (recalling that the core concept of due process is protection against arbitrary action and only the most egregious official conduct). *See also* Docket No. 33 at 13-14.[30]

### C.    Counts I, II, III and VI - Pennsylvania State Law Claims

#### 1. Exercise of Supplemental Jurisdiction

Under 28 U.S.C. § 1367, "a district court has authority to exercise supplemental jurisdiction over non-federal claims arising from the same case or controversy as the federal claim." *De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301, 307–08 (3d Cir. 2003). "The purpose of supplemental jurisdiction is to promote convenience and efficient judicial administration." *Resnick v. Lower Burrell Police Dept.,* 2010 WL 88816, at *3 (W.D. Pa. Jan. 8, 2010). When the district court dismisses all of the claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). "A district court's decision whether to exercise

---

[30] As Defendant notes, Plaintiff's (late and non-responsive) two-page Reply to the Court's Order to Show Cause (Docket No. 30) newly asserts that Defendant failed to provide him notice prior to "exercising its eminent domain powers" and demolishing the 27th St. property.  As competently addressed by Defendant, to the extent Plaintiff intends to newly raise a procedural due process claim, the facts properly before the Court on this motion show that (a) Plaintiff had pre-deprivation notice of the demolition (from (1) his citation for failing to implement Defendant's demolition order for a building declared "blighted" under the Code through (2) his hearing and conviction on that charge) and (b) Defendant's notice procedures, adopted from the ICPM Code, provide constitutionally sufficient notice. (Docket No. 36 at 24-27); *id.* at 26-28 (citing further supportive law with which the Court concurs). *Cf. supra* at 5-6 and n.10.

[supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.,* 556 U.S. 635, 639, 129 S.Ct. 1862, 173 L.Ed.2d 843 (2009).

In the interests of judicial economy and fairness, the Court will retain jurisdiction over these claims. The present case was first commenced in September, 2022 and was subsequently delayed and stayed – first to accommodate Plaintiff's request for time to obtain other counsel and then as a result of his failures to engage in discovery, settlement or otherwise prosecute his claims. Given the Court's familiarity with the record and the action's present posture, retaining the state court claims and addressing these claims on the merits serves judicial efficiency.

### 2. Statutory Time Bar; Political Subdivision Tort Claims Act Immunity

As noted in Section IV(A), *supra*, Plaintiff's state law claims for negligence, interference with contract, abuse of process (Counts I-III, respectively) and false imprisonment (Count VI) are subject to a two-year statute of limitations. See 42 Pa. Cons. Stat. Ann. § 5524(4).  Thus, to the extent the allegations of the Complaint premise a state law claim on tortious conduct alleged to have occurred prior to September 15, 2020, said claims are time-barred. Counts I through III are expressly based on actions taken and known in years outside the applicable statute of limitations.  And although Count VI omits reference to a particular year, the incorporated Complaint allegations detail that the three bench warrants on which Plaintiff was jailed were issued for fines on the Aldrich Ave. property assessed, owed and appealed in 2018.[31] *See also* Section III, *supra*; Docket No. 33 at 9-10.

Even if a state law claim were not time-barred, Defendant correctly observes that each of these state counts is barred by Defendant's immunity from tort liability, as a "local agency" under

---

[31] (Docket No. 1-1 at ¶¶ 96-103,117-18, 124-128).

the Pennsylvania Political Subdivision Tort Claims Act (the "PPSTCA"), which provides, with limited and inapplicable exception, that: "[N]o local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. Ann. §§ 8541, 8542. *See, e.g.*, *Guy v. Bristol Borough*, 2018 WL 3141429, at *6 (E.D. Pa. June 27, 2018) (dismissing negligence claim in case for damages arising from municipality's demolition); *id.* (citing *Win & Son, Inc. v. City of Philadelphia*, 162 F. Supp. 3d 449, 466 (E.D. Pa. 2016) (holding that the PSTCA immunized the City from damages arising from demolition of a property)); And Counts II, III, and VI are intentional torts, with respect to which a local agency can never be held liable. *See e.g.*, *Madar v. City of Philadelphia*, 2021 WL 2156362, at *13 (E.D. Pa. May 27, 2021); *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1022-23 (Pa. Commw. 2014) ("Under the Tort Claims Act, the City cannot be held liable for intentional torts, and [plaintiffs'] claims for wrongful use of civil proceedings, abuse of process, and intentional interference with contractual relations do not otherwise fit within a delineated exception to governmental immunity for negligence claims."). Docket No. 33 at 12 (providing additional citations).

### 3. Failure to State a Plausible State Claim

In addition to these grounds for dismissal for statutory time-bar and/or PPSTCA immunity, the Court largely concurs with Defendant's averments that although the Complaint contains many scattershot allegations or boilerplate language mentioning some of the terms used in various potential state law causes of action, it also further fails to state a plausible claim on the legally requisite elements. *See, e.g.*, Docket No. 33 at 16-17 (noting with case citations that Count VI, False Imprisonment - based on Plaintiff's confinement pursuant to bench warrants issued by the District Magistrate and performed by the Sheriff as a result of his non-payment of fines – fails to

implicate City, is barred by absolute immunity, cannot be met on the element of lack of probable cause and would call into question Plaintiff's conviction).

The Court also observes, as to Count II, that a Plaintiff alleging tortious interference with contractual relations under Pennsylvania law must plead the following elements: (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct. *See e.g., CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc*., 357 F.3d 275, 284 (3d Cir. 2004). The Complaint does not plausibly plead these elements, nor do the facts before the Court suggest that it could. And as to Count III, based on Defendant's alleged issuance of additional citations prior to the deadline given to complete repairs: A claim for "abuse of process is concerned with perversion of process after litigation has begun." *Gebhart v. Steffen*, 574 F. App'x 156, 160 (3d Cir. 2014). Thus, in order to assert a claim for abuse of process, "the improper use must be the primary purpose of the proceeding and there is no action for abuse of process when the process is used for the purpose for which it is intended." *Id.* The Complaint thus makes no plausible claim for abuse of process.[32]

## V.    CONCLUSION

At bottom, the circumstances presented – including those of Plaintiff's financial and tenant difficulties, and his struggles/failures to meet both the necessities of property ownership and the

---

[32] Although it seems unlikely, to the extent Count III was intended to raise a misguided Section 1983 malicious prosecution claim, it remains facially insufficient, as the facts of Plaintiff's Complaint (a) indicate probable cause for the proceedings alleged was evident and (b) make no plausible claim that the relevant actions were actuated by malice - each of which goes to a requisite element.

timely participation requirements of legal process – are unfortunate, but the facts alleged do not

rise, as a matter of law, to a cognizable violation of any constitutional or other legally actionable

right by Defendant City of Altoona. The Court further concludes, based on its thorough review of

the factual allegations and its analysis above, that any renewed leave to amend would be futile. *See*

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).[33]

Accordingly, Defendant's Motion to Dismiss (Docket No. 32), will be granted with prejudice, and

the case closed.  An appropriate Order follows.


Dated: April 10, 2025

                                        *s/Nora Barry Fischer*
                                        Nora Barry Fischer
                                        Senior U.S. District Judge

  cc/ecf: All counsel of record.

        Shlomo Dotan
        537 South Logan Blvd.
        Altoona, PA 16602
        urlots@breezeline.net
        (via email and first class mail)

---

[33] The Court also notes that, were the action not clearly subject to dismissal on multiple other grounds, the Court would
be inclined to dismiss it for failure to prosecute under Fed. R. Civ. P. 41(b). *See* Sections I and II, *supra*.